Brant, J.
Defendant Daniel Ward Goldstone (“Goldstone”) is the president of defendant Norfolk Financial Corporation (“Norfolk”) and was, at the time this matter arose, an attorney.[2] On September 22, 2003, Norfolk obtained a default judgment in the amount of $853.98 against Thomas S. Jessamey (“Jessamey”) in a small claims action in the Lynn District Court. Norfolk also obtained an execution and on December 8, 2003, successfully moved for the Lynn District Court’s appointment of defendant South Coast Legal Services, Inc. (“South Coast”) as a special process server to serve the execution.
Jessamey owned at that time a 2002 Dodge Neon which had a market value of approximately $6,000.00. Jessamey still owed $12,500.00 on the promissory note he executed to purchase the car.
Upon receiving the execution from Norfolk, South Coast authorized its agent, defendant Anthony Diauto (“Diauto”), to seize Jessamey’s car. On January 10, 2004, Diauto appeared at Jessamey’s home in Saugus and told Jessamey that he was a constable. In fact, Diauto was not a constable in Saugus. Diauto seized Jessamey’s Dodge Neon, and gave Jessamey a letter from South Coast demanding $1,538.30 in what was called “per diem interest” from December 26, 2004. The $1,538.30 amount was apparently calculated as the balance on Norfolk’s small claims judgment (alleged to be $876.72), plus purported constable’s fees of $625.00 and what was labeled as “poundage” in the amount of $36.77. When Jessamey did not pay the demanded monies, Diauto removed the Dodge Neon to a storage lot controlled by South Coast.
One month later, on January 26,2004, South Coast informed Jessamey that Norfolk had abandoned its efforts to collect its debt and that Jessamey was free to pick up his car. South Coast encouraged Jessamey to do so quickly to avoid additional storage fees.
Jessamey responded by filing this action against all four defendants in twelve counts which alleged five different G.Lc. 93A violations (misuse of execution/civil extortion, seizure of exempt property, retention of car after knowledge of lien value, unfair collection of a debt and general unfair and deceptive trade practices), a violation of the Massachusetts Civil Rights Act, conversion, abuse of process, intentional infliction of emotional *83 distress, and three separate violations of the Federal Debt Collection Act (coercing payment, unlicensed debt collection, and unfair debt collection practices).
The defendants filed answers and motions for summary judgment, which the motion judge allowed as to all counts. Jessamey appealed.
Although Jessamey’s complaint sets forth many different legal theories, he raises only two issues which warrant appellate review. First, he argues that his Dodge Neon should have been exempt from seizure and that the defendants’ actions in taking his car to satisfy his debt to Norfolk were illegal. Second, Jessa-mey contends that Diauto’s misrepresentation of himself as a constable and his assessment of unlawful constable fees and poundage was actionable.
1. The validity of the seizure turns on the interpretation to be given to G.L.C. 235, §34, Sixteenth, which exempts from seizure: “An automobile for personal transportation or to secure or maintain employment, not exceeding seven hundred dollars in value.” Assuming that Jessamey used his car either for personal transportation, or with regard to his employment, the dispositive question is the meaning of the statutory term “value.” Jessamey argued in the trial court and before this Division that because the purchase liens on his car ($12,500.00) exceeded its market value ($6,000.00), the car had no value and should, therefore, have been exempt from seizure.
The statutory exemption from seizure of an automobile with a value of less than $700 has not been the subject of any Massachusetts state cases. However, the Federal District Court utilized a common sense construction of the term “value” as “market value” in ruling that only cars with market values less than $700 are exempt. Levin v. Mauro, 425 F. Supp. 205, 207 (D. Mass. 1977). “Such a limitation manifests a legislative intention to ensure minimal access to transportation, but not at the undue expense of creditors.” Id. The Levin Court held that in a bankruptcy proceeding, “a debtor owning a car in excess of the limit should be required to turn it over to the trustee for liquidation, but would be permitted to purchase another vehicle with $700 derived from liquidation proceeds.” Id.
That construction of the G.L.c. 235, §34, Sixteenth term “value” as market value is in accord with Massachusetts interpretations of other parts of the statute which exempt from seizure household furniture not exceeding three thousand dollars in value, §34, Second; books not exceeding $200 in value, §34, Third; tools, implements and fixtures not exceeding $500 in value, §34, Fifth; materials and stock necessary for carrying out a trade or business not exceeding $500 in value, §34, Sixth; provisions not exceeding $300 in value, §34, Seventh; boats, fishing tackle and nets actually used in commercial fishing not exceeding $500 in value, §34, Ninth; and one sewing machine in actual use not exceeding $200 in value, §34, Twelfth. Cases interpreting these provisions have also equated value with market value, Devlin v. Stone, 58 Mass. (4 Cush.) 359 (1849), or with an item’s price. Dowling v. Clark, 85 Mass. (3 Allen) 570 (1862). The Legislature set a value limit so that both creditors and debtors can know which property cannot be reached. Mannan v. Merritt, 93 Mass. (11 Allen) 582, 584 (1866) (because $100 of furniture was exempt from seizure, an officer attaching property had to leave behind furniture valued at $100). None of these cases considered whether the items in question were mortgaged or otherwise encumbered in determining their value.
Jessamey finds support for his contrary position in the case of Tryon v. Mansir, 84 Mass. (2 Allen) 219 (1861), in which the plaintiff owned two cows, one of which was subject to a mortgage. The defendant seized the other cow pursuant to an execution. The applicable statute at the time exempted one cow from seizure.[3] The Supreme Judicial Court found that the defendant could not seize the other cow because “the plaintiff would be left in a worse condition than a debtor who was the *84 absolute owner of only one cow.” Id. at 219-220.
However, apart from demonstrating the importance of farm animals in an earlier agrarian time, the Tryon case offers little assistance in resolving the present automobile issue. The other cases cited above interpret parts of the statute which exempt automobiles, furniture, or other items up to a stated value. The courts have been careful to note that the debtor could protect items if they were less than the statutory value minimum, or could use the proceeds of the foreclosure sale to purchase a replacement item with a market value up to that minimum. Levin v. Mauro, supra; Manna v. Merritt, supra. Because the Legislature has not attempted to exempt a cow up to a stated monetary value, the Court in Tryon had to exempt an entire cow of whatever value it might have had or the debtor would have had no protection.
We conclude that in the case of automobiles, as with other property exempted from seizure by G.L.C. 235, §34, that the term “value” should be given its common meaning of “market value.” Because the market value of Jessame/s Dodge Neon was approximately $6,000.00, die car was subject to seizure. Since the seizure was proper to the extent that the automobile was not exempt, summary judgment was properly entered in favor of the defendants on the complaint counts for misuse of execution/civil extortion, seizure of exempt property, retention of car after knowledge of lien value, violation of the Massachusetts Civil Rights Act, general violation of the Federal Debt Collection Act, abuse of process, intentional infliction of emotional distress and conversion.
2. Summary judgment should not have been allowed for the defendants on the remaining counts for improper and unfair debt collection practices, a general violation of G.L.c. 93A and false methods to collect a debt. Jessamey adequately alleged that Diauto represented that he was a Saugus constable, which he was not, and attempted to impose and collect unlawful fees for constable services and poundage. Jessamey contends that Diauto should have either billed Norfolk for his services or sought an amendment of the small claims judgment to “add the costs of service of any postjudgment process that was necessary to enforce the judgment” Massachusetts Uniform Small Claims Rule 7(h). See also Lewis v. Norton, 164 Mass. 209 (1895). The facts alleged in the complaint suggest that Diauto, acting on behalf of South Coast and in concert with Nor folic and Goldstone, was not merely seeking to enforce an execution as permitted by statute, but was improperly attempting to use the seizure of the car as leverage to compel Jessamey to pay unlawful fees to which Diauto was not entitled.
Diauto’s ruse in passing himself off as a constable in a town where he lacks such authority exposed him and the other defendants to potential liability for improper and unlawful debt collection practices and unfair and deceptive business practices. As the Appeals Court has stated:
It is inescapable from the record that the constable, acting in concert with the landlord, used the execution as an instrument of persuasion rather than a means of satisfaction. The conduct of the constable lends itself to, and in this case smacks of, a harassing and coercive kind of debt collecting now proscribed under G.L.c. 93, §49, which makes such conduct actionable under G.L.c. 93A [emphasis added].
Koonce v. Aldo Realty Trust, 8 Mass. App. Ct. 199, 201 (1979).
Accordingly, summary judgment for the defendants on the complaint counts alleging improper debt collection practices, a general violation of G.L.c. 93A using false methods to collect a debt and using unfair debt collection practices is vacated, and the case is returned to the Lynn District Court for trial on those counts. Summary judgment for the defendants on the remaining complaint counts is affirmed.
So ordered.

 Goldstone has since been disbarred. In Re Goldstone, 445 Mass. 551 (2005).

 With regard to farm matters, the statute now exempts “[tjwo cows, twelve sheep, two swine and four tons of hay.” G.L.c. 235, §34, Fourth.